PATRONS' MUTUAL FIRE INSURANCE CO. OF MICHIGAN v. HOLDEN.

1. FRAUDULENT CONVEYANCES—HUSBAND AND WIFE—MORTGAGES— LIFE LEASE.

In judgment creditor's suit against husband and wife, to set aside life lease and mortgage in wife's name as in fraud of husband's creditors, finding of court below that wife was lawful holder thereof is affirmed, on appeal.

On burden of proof as to fraud against creditors in transfer from husband to wife, see annotation in 56 L. R. A. 823.

Preference of relative by transfer of property in satisfaction of debt, see annotation in 36 L. R. A. 361.

Transactions between husband and wife as fraud on creditors, see annotation in 35 L. R. A. 71.

2. WILLS—DEEDS—HUSBAND AND WIFE—TITLE.

A deed from wife to husband, which remained under her control, which was made solely for testamentary purposes, and which was later destroyed, did not pass title.

3. FRAUDULENT CONVEYANCES—HUSBAND AND WIFE—BURDEN OF PROOF—LAND CONTRACTS.

In judgment creditor's suit against husband and wife to reach husband's property, burden of proof was on wife to show that husband no longer had any interest in property sold to him on contract by the wife and surrendered by him, although he had spent a large sum in improving it, and the rent, which he collected, far exceeded the contract payments.

4. SAME.

Any equity husband has in land contract from wife, which he surrendered to her, over and above balance due to her, is subject to execution by his judgment creditors.

5. SAME—MORTGAGES—BONA FIDE TRANSACTION.

Mortgage to wife on property sold by husband and credited by her on debt due from him on household expenses was not void as to husband's creditors, where evidence shows that it was *bona fide* transaction.

6. SAME.

Mortgage to husband to complete sale of land by him, not accounted for, is subject to execution by his judgment creditors unless it has passed into hands of *bona fide* purchaser.

7. SAME—PARTIES.

In judgment creditor's suit against husband and wife to reach husband's property, loan by wife to her stepson, who was co-defendant with husband in suit in which judgment was obtained but who is not party to instant suit, is not considered by court.

Appeal from Ingham; Carr (Leland W.), J. Submitted January 23, 1930. (Docket No. 121, Calendar No. 34,599.) Decided April 7, 1930.

Judgment creditors' bill by the Patrons' Mutual Fire Insurance Company of Michigan, a corporation, against Ellsworth A. Holden and Rizpah A.

Holden. From a decree dismissing the bill, plaintiff appeals. Modified and affirmed.

*Kinnane & Leibrand,* for plaintiff.

*Thomas, Shields & Silsbee,* for defendant Ellsworth A. Holden.

*Foster & Cameron,* for defendant Rizpah A. Holden.

Butzel, J. In the year 1927, plaintiff recovered a judgment against defendant Ellsworth A. Holden, which, as modified by this court in 245 Mich. 493, amounted to $32,078.03. The indebtedness for which the judgment was rendered was contracted during the period from 1915 to 1924. Defendant Holden married Rizpah Holden in 1916; there were no children of this marriage. Defendant had a son, Harold P. Holden, by a previous marriage. Mrs. Holden was the heir of her parents, from both of whom she inherited property, included in which were the old family home, referred to as the St. Joseph street property, in Lansing, Michigan, and a mortgage on property in Hillsdale county. Plaintiff seeks in this action, by means of a judgment creditor's bill against Holden and wife, to subject certain property to execution. The court below dismissed the bill.

We shall discuss the properties separately. Holden owned a homestead at No. 600 Shiawassee street, Lansing, Michigan, upon which he gave to Mrs. Holden a mortgage for $14,000, and also a life lease. The record does not show any irregularity in this transaction. Mrs. Holden showed that she had received $6,500 from the mortgage inherited from her mother on property in Hillsdale county; and further, that she had obtained $7,000 on a mortgage on the

St. Joseph street home. There was also a small amount which she received as interest and certain other small sums that Holden owed her. She showed that she turned all of this over to her husband, and there is no satisfactory proof to the contrary. It is further shown that the value of the Shiawassee street home is not much in excess of the amount of the mortgage, and that Mrs. Holden furnished a considerable sum to repair the home, and in consideration of this a life lease was given to her. We find no reason to disturb the findings of the lower court that Mrs. Holden was the lawful holder of the life lease and mortgage.

Mrs. Holden, as owner of the St. Joseph street property in Lansing, Michigan, entered into a land contract with Mr. Holden, dated the 4th day of September, 1919, to sell the property to him for $16,000. On the 28th day of May, 1923, the contract was formally terminated by an underwriting on it, written in what appears to be indelible pencil. There was still a balance of $13,783.74 due on the contract, according to the statement of defendants' counsel taken from Mrs. Holden's account book, which is not disputed by plaintiff. The contract appears to be a valuable one, although the record is very bare as to what the real value of the property is. There was testimony that a real estate agent had told Mrs. Holden that the property, exclusive of an adjoining vacant lot which was also included in the land contract, was worth between $12,000 and $13,000. Notwithstanding the fact that the land contract had been surrendered in the year 1923, Mr. Holden invested, a little over a year later, a sum between $7,000 and $9,000 in remodeling the old home into an office building, and for three years thereafter he collected the rent from said property.

Again the record is bare as to what rent was paid for the building, but inferentially it amounted to somewhere between $2,500 and $3,000 a year after the remodeling. Mrs. Holden explains that the reason she permitted Mr. Holden to collect the rent after the cancellation of the land contract was in order to reimburse him for the amount spent by him in the remodeling of the building. She, however, produced no formal evidence as to any agreements concerning this matter. It seems a bit strange that a couple who were as meticulous as these defendants in reducing their business transactions, as well as those relating to household expenses, to writing, did not execute any written agreement in this instance. The testimony indicates that, notwithstanding the surrender of the contract, Holden continued for some time to make payments of $100 a month. He claimed that these payments were for interest on the mortgage on the Shiawassee street home, although the exact amount of $100 a month was due on the contract, while it would require only $70 a month to pay the interest on the mortgage. This fact alone, however, is not decisive. It seems still stranger that Holden, at a cost of between $7,300 and $9,000, should remodel the building with his own funds after he had surrendered the contract, and then he was permitted to remain in possession of the property for a further period of three years. This expenditure was made by him but a little over a year after the time when he had been so hard up that he had had to borrow $7,000 (included in the $14,000 mortgage) from Mrs. Holden, in order to pay a debt. Mrs. Holden volunteered the information that at one time she had executed a deed to Mr. Holden for the property so that he would become the owner of it in case of her death, and that it was made just prior to

taking a trip to California, but upon their return the deed was destroyed. The deed remained under her control, and was made solely for testamentary purposes, and did not pass title.

It further seems strange that Holden would surrender a land contract on which there was but $13,783.74 due, when the rental from the property, after the remodeling was completed, exceeded the amount of the payments due under the contract by a large amount. The burden of proof was upon Mrs. Holden to show that Mr. Holden had no longer any interest in this land contract. *Eberline* v. *Prager,* 209 Mich. 322. We are satisfied from the record, that, if there is any equity over and above the balance due on the land contract, which is herewith reinstated, it should belong to the creditors. The lower court is instructed, therefore, to treat the land contract the same as if it were still in existence, and Mrs. Holden should be credited with interest to date, together with any taxes and insurance or expenses of upkeep that she paid out, the same as if the land contract had not been surrendered. She, however, should be debited with all moneys received and the balance due her on the land contract thus ascertained. Any equity over and above the amount due her is subject to levy and execution. Out of the balance found due and to be paid to Mrs. Holden she must pay the first mortgage, and any other liens created by herself on the property.

In April, 1926, defendant Ellsworth Holden had a claim against the estate of one Corbin, which was eventually settled at a date not indicated in the record, by transferring to Holden a piece of property subject to a $1,600 mortgage. One Devore approached Holden for the purpose of purchasing this property, but hesitated to buy unless he could secure

sufficient funds to reconstruct the building thereon. It was eventually arranged that Mrs. Holden should loan him $3,000 upon another piece of property on Francis street, Lansing. The land acquired from the Corbin estate was then deeded to Devore, subject to the outstanding mortgage, for a consideration of $1,400, $500 of which was paid in cash to Mr. Holden and the remainder by a $900 mortgage to Mrs. Holden. This $900 was credited by her on a debt due her from Mr. Holden for household expenses. The date of this deed to Devore was June 4, 1927, which was subsequent to the opinion of the lower court in the original case, and which fact plaintiff seizes upon as indicating a fraudulent attempt on the part of Holden to put this property beyond the reach of his creditors. Since this household account between Mr. and Mrs. Holden seems to have been a *bona fide* transaction extending over a period of years, and since the $900 mortgage not only includes the property in question but another piece not involved in this suit and about which the record is bare, we believe that this mortgage should not be set aside.

One Wolfe was the vendee in a land contract in which the vendor was Mr. Holden. In the spring of 1927, an arrangement was made whereby Holden secured for Wolfe a loan of $2,500 upon this property from a stranger. A deed was then given to Wolfe and the cash turned over to Holden, together with a $350 mortgage to complete the purchase price. Wolfe is not certain whether the mortgage was given to Mr. Holden, Mrs. Holden, or both, and there is a direct conflict between the testimony of Wolfe and Holden as to who was the instigator of the plan of giving the mortgage to complete the contract. The present whereabouts of the $350 mortgage is not shown. Unless it has passed into the hands of a

*bona fide* purchaser for value, it should be subject to execution by the plaintiff. The remainder of the transaction is not disturbed.

In October, 1927, Mrs. Holden loaned to her stepson, Harold P. Holden, $600 upon a piece of property owned by him. Plaintiff claims that since this loan was made some time after the opinion of the lower court in the former case, and since Mrs. Holden had knowledge of that opinion, this is a further attempt to dispose of property subject to execution on the part of one of the defendants to that suit. Whatever may be the truth of this claim, Harold P. Holden is not a party defendant in this case, and that matter is not properly before this court for determination.

We find the record extremely unsatisfactory, and the three successive briefs of plaintiff indulge more in recriminations and conclusions than in facts and law. While there are many suspicious circumstances set forth in the record, and there are frequent corrections of testimony, nevertheless, we are impressed with the fact that allowance must be made for the many years that elapsed between the time of the transactions and the taking of the testimony, and, furthermore, that the corrections made by Mrs. Holden, many of which she made voluntarily, worked to her disadvantage. She exhibited complete records and documents which justify her position, except in the matters indicated.

The decree is modified to the extent hereinbefore stated, and, as modified, affirmed, and the case is remanded to the lower court in accordance with the instructions herein contained.

Wiest, C. J., and Clark, McDonald, Potter, Sharpe, North, and Fead, JJ., concurred.