MAGILAVY *v.* FEKETE.

1. PRINCIPAL AND AGENT—EXECUTION OF TRUST MORTGAGE NOT AUTHORIZED UNDER LIMITED POWER OF ATTORNEY.

Power of attorney permitting acts generally done in ordinary course of clothing business was limited, and did not authorize execution by attorney of trust mortgage for benefit of creditors.

2. SAME—POWER OF ATTORNEY STRICTLY CONSTRUED.
   Power of attorney is strictly construed, and may not be enlarged by construction.

3. SAME—CREDITOR NOT BOUND BY UNAUTHORIZED TRUST MORTGAGE EXECUTED BY DEBTOR'S ATTORNEY.
   Where trust mortgage for benefit of creditors executed by attorney was not authorized under power of attorney, title to property, as far as creditor who had received no dividends is concerned, still remained in mortgagor.

4. FRAUDULENT CONVEYANCES—CONVEYANCE TO WIFE.
   Transaction whereby title to property was conveyed to wife through foreclosure of trust mortgage without any consideration being paid by her except execution of notes is *held*, under all the circumstances, to be fraudulent and illegal.

5. SAME—HUSBAND AND WIFE.
   Husband may lose his property and wife acquire it with her separate resources, or on her individual credit, but transactions between husband and wife should be carefully scrutinized.

6. ASSIGNMENTS FOR BENEFIT OF CREDITORS—ESTOPPEL.
   Creditor who was not included in schedule of creditors, and who received no dividends under trust mortgage, is not estopped from denying its validity.

Appeal from Wayne; Root (Jesse H.), J., presiding. Submitted June 3, 1930. (Docket No. 12, Calendar No. 34,887.) Decided October 3, 1930.

Bill by Frieda Magilavy against Paul Fekete and another to restrain a levy of execution. From a decree for plaintiff, defendants appeal. Reversed.

*John McNeil Burns* (*Allan M. Thompson,* of counsel), for plaintiff.

*Henry Stone* and *Edward C. Moran,* for defendants.

BUTZEL, J. Defendant Paul Fekete in the year 1925 leased his building in Detroit, Michigan, to a

person who represented himself to be Abe Magilavy, under which name he signed the lease and carried on all his business dealings. In the year 1927 Fekete brought three suits against him in the justice's court in Detroit for the nonpayment of installments of rent. He recovered three separate judgments, one of which was paid. In each of them process was served upon the same person who thus represented himself to be Abe Magilavy. No objection to the regularity of the service was made prior to the entry of the judgments. This same person who had represented himself to be Abe Magilavy subsequently executed a trust mortgage for the benefit of certain creditors, whose names were not set forth in the instrument filed in the office of the city clerk of the city of Detroit. It is claimed that they were set forth in a schedule filed with the trustee under the mortgage. The trustee foreclosed this mortgage, and the property was bid in by one Schoenfeld who placed the same party who had represented himself to be Abe Magilavy in charge of the business.

After a number of months had elapsed, Schoenfeld gave a bill of sale to one Frieda Magilavy. She paid no consideration whatsoever for the business except that a chattel mortgage, secured by the business and serial notes collateral to the mortgage, all running to Schoenfeld for the exact amount still due his firm, were executed in her name. These notes were indorsed by the same person who had represented himself to be Abe Magilavy, but in this instance he signed the name of D. Magilavy. He claims now that his real name is Dave. Frieda Magilavy, the wife of Dave, appears on the notes as maker. The record is not clear as to whether she signed her name or whether her husband signed for her. It is, however, not disputed that the negotia-

tions and transactions were carried on exclusively by her husband, now calling himself David Magilavy. He claims that he was acting under a power of attorney from Frieda, his wife. This was not produced at the hearing.

Fekete was not listed as one of the creditors in the schedule delivered to the trustee under the mortgage by virtue of which the business was sold. He received no dividends under this mortgage, was not included in the schedule of creditors, and was not estopped from attacking the mortgage. Claiming that the mortgage and subsequent proceedings were a nullity and a fraud as far as he was concerned, Fekete proceeded to levy upon the stock of goods on the theory that they were still the property of Abe Magilavy, and the various transactions hereinbefore set forth did not change the title to the property.

The mortgage given to Schoenfeld has been fully paid, and the sole question that arises is whether levies are valid under the two judgments against the assets which Frieda Magilavy claims belong to her. The business was moved to a new location and conducted under the name of "Magil Clothing Store." Upon the levies being made, Frieda brought an injunction suit against Fekete and the levying officer to restrain the levying of an execution on her property but upon judgments not rendered against her. Upon her giving a bond to pay the judgments in case the equity suit should be decided adversely to her, the court made the temporary injunction a permanent one. Upon a subsequent hearing, a decree was entered in her favor against Fekete and the levying officer. The defendants have appealed.

A careful reading of the record impresses us that a decree should have been rendered in favor of defendants. Although she swore to the bill of complaint, nevertheless the plaintiff was unable to testify of her own knowledge to many of the important facts alleged in the bill of complaint and upon which the decree is based. Many of the allegations of the bill refer to transactions that took place while she was not present. The allegations are not on information and belief and are sworn to positively. Under the circumstances, we are not impressed with the truth of many of her statements.

In justification of his claim, David Magilavy testified that Abe is his father, who is a resident of Akron, Ohio, and neither writes nor reads English and is over 90 years of age. The mortgage to the trustee was signed by Abraham Magilavy. From the acknowledgment, it would appear that Abraham Magilavy personally appeared before a notary in Wayne county. It is admitted that the person who now represents himself to be Dave Magilavy signed and acknowledged the trust mortgage as Abe Magilavy. It was not signed by him as attorney in fact. If the mortgage was never executed by his father or by his duly authorized agent, then it was a nullity. Dave, however, claims that he acted under a written power of attorney from his father. It became essential to produce it. Therefore, one was subsequently obtained from the father, executed by him at Akron. While it is written in English, the signature indicates that he could not have read it. It constitutes Dave his attorney in fact to conduct a clothing business in the city of Detroit, Michigan, to open a bank account, indorse for deposit checks, etc., draw and sign checks, hire and discharge employees, sell merchandise, and ''generally to do all

things necessary or proper in my interests in the ordinary course of the said clothing business.''· It also, contains the following unusual clause:

"And I further declare that the foregoing power of attorney is a duplicate of a power of attorney by me executed to the said Dave Magilavy on or about March 5, 1924, which said power of attorney has become mislaid, lost or destroyed.''

This new power of attorney was executed on January 17, 1929, about a year and one-half after the mortgage to the trustee was given. This was several months after the bill of complaint was filed and not long before the case was set for hearing.

Even assuming the statement regarding the loss of the power of attorney and the giving of a new one is true, nevertheless this power of attorney in no way gave the attorney any authority to execute a trust mortgage for the benefit of creditors. The giving of a trust mortgage is not done in the ordinary course of business. A power of attorney is strictly construed, and cannot be enlarged by construction. *Jeffrey* v. *Hursh,* 49 Mich. 31; *Penfold* v. *Warner,* 96 Mich. 179 (35 Am. St. Rep. 591); *Parkhurst* v. *Trumbull,* 130 Mich. 408.

It will be noted that the power of attorney did not even give the attorney in fact the right to execute notes in the principal's name. It was a limited power of attorney, only permitting acts that are generally done in the ordinary course of business. The mortgage to the trustee was not properly authorized by the power of attorney, and therefore, as far as defendant Fekete is concerned, the title still remained in Abe Magilavy against whom Fekete had the judgments.

After the sale from Schoenfeld to Frieda, there seemed to be no substantial change in the manner of

conducting the business except that about four months later the name was changed to "Magil Clothing Store." It is admitted that no money was paid by Frieda, but that the entire purchase price was paid out of proceeds of the business just as the debts had theretofore been paid. Statements made by Dave, a witness for plaintiff, his wife, cannot be overlooked in reading the record. Referring to a time subsequent to that when he claims his wife became the owner of the business, he testified:

"I moved the store.  *  *  ,  *  I didn't have the same name on my store.  *  *  *  I have just the store alone at that place.  *  *  *  I never use the name of Magil as my name, I just happened to pick it up as a trade name.  *  *  *  I have been using the abbreviation of Magilavy since August, 1928, I never used 'Magil' before 1928. After I vacated the premises I leased from Mr. Fekete under the name of A. Magilavy, then I assumed the name of Magil as a trade name."

A further recital of the facts would be of no benefit to the profession. There is a lack of frankness and candor on the part of plaintiff's witnesses. Many of their replies are evasive and at times insolent. It is admitted that Frieda did not pay a single penny towards the purchase of the business. While the giving of the notes alone might constitute a sufficient consideration, we believe that when the entire transaction is scrutinized, it amounts to a fraudulent and illegal scheme to take the title from A. or D. Magilavy and place it in Frieda's name without any consideration. A husband may lose his property and a wife acquire it with her separate resources, or on her own individual credit. Transactions, however, between husband and wife should be carefully scrutinized. *Eberline* v. *Prager*, 209

Mich. 322; *Patrons' Mutual 'Fire Insurance Co.* v. *Holden,* 250 Mich. 408. Fekete, not having received any dividends under the trust mortgage, was not estopped from denying its validity. Under the circumstances, we are constrained to reverse the decision of the lower court and order a decree entered dismissing the bill with a right on the part of Fekele to sue on the bond filed in this cause. Defendants will recover costs.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.