JAYNES *v.* PETOSKEY.

1. BROKERS—COMMISSIONS—SALE OF REALTY—STATUTE OF FRAUDS.
   It is essential to validity of a realty broker's commission agree-
   ment under the statute of frauds that the writing show an
   agreement or promise; the signature of the party to be
   charged, or his agent; and an indication that it relates to
   payment of a commission for the sale of an interest in real
   estate (3 Comp. Laws 1929, § 13417).

2. SAME—RIGHT TO RECOVER COMMISSION ON QUANTUM MERUIT.
   Oral agreement to pay commission on sale of land being void
   under statute, no recovery on *quantum meruit* may be had,
   even though service is rendered and accepted (3 Comp. Laws
   1929, § 13417).

3. FRAUDS, STATUTE OF—PRINCIPAL AND AGENT.
   Rule that agent need not have written authorization to bind his
   principal applies only to statute of frauds pertaining to per-
   sonal property, not statute relating to realty (Comp. Laws
   1929, §§ 9443, 13417).

4. BROKERS—COMMISSIONS—SALE OF REALTY—STATUTE OF FRAUDS
   —EVIDENCE.
   In realty broker's suit to recover commission for sale of land
   pursuant to oral agreement with owners' son who was then
   handling his parents' affairs, written memorandum with
   reference to such commission made in accounting by son with
   the guardian of the estate of his parents which was not
   signed by the estate or its representative and did not show
   that defendant son had assumed the liability was not suf-
   ficient to establish liability under the pertinent statute of
   frauds (3 Comp. Laws 1929, § 13417).

5. SAME—COMMISSIONS—SALE OF REALTY—STATUTE OF FRAUDS—
   BREACH OF IMPLIED WARRANTY.
   Where written memorandum relating to commission to plaintiff
   broker for sale of real estate was insufficient to satisfy the

Sufficiency of written memorandum, see 1 Restatement, Agency,
§ 153; 1 Restatement, Contracts, §§ 207, 208, 210, 211, 212.

statute of frauds as to defendant estate of owners or as to
their son who had made oral agreement as to commission with
plaintiff, latter may not impose personal liability upon son
on theory of breach of implied warranty of authority to enter
into the agreement (3 Comp. Laws 1929, § 13417).

Appeal from Wayne; Brown (William B.), J.,
presiding. Submitted April 4, 1944. (Docket No.
10, Calendar No. 42,593.) Decided May 17, 1944.

Bill by Clinton C. Jaynes against August Petoskey
and John D. Pheney, administrator of the estate of
Hulda Petoskey, deceased, for a money decree and
injunction. Bill dismissed. Plaintiff appeals. Af-
firmed.

*Bloom & Bloom,* for plaintiff.

*William C. O'Reilly* (*Echlin & Lendzion,* of coun-
sel), for defendant Petoskey.

*John D. Pheney,* administrator, *in pro per.*

SHARPE, J. Plaintiff appeals from a decree dis-
missing his bill of complaint in which he sought to
recover a commission upon the sale of a 55-acre tract
of land. The material facts are not in dispute.
Rudolph and Hulda Petoskey, the father and mother
of August Petoskey, were the owners of the land in
question. Rudolph died in 1939, and Hulda in 1942.
For some years prior to their death August Petos-
key, by verbal agreement, managed their property.
In October, 1935, August Petoskey entered into a
verbal agreement with plaintiff, by virtue of which
plaintiff was to receive a commission of $1,500 if he
found a purchaser for the 55-acre tract. On May 7,
1936, the property was sold for $20,000, upon which
a down payment of $8,000 was made, and the balance

to be paid in subsequent instalments. Subsequent to the death of his parents August Petoskey continued to act, without legal authority, as their agent. John D. Pheney was appointed guardian of the persons of Rudolph and Hulda Petoskey, and later appointed administrator of their estates. After his appointment as guardian he called upon August Petoskey for an accounting of his transactions in behalf of his parents. August Petoskey submitted to John D. Pheney, as guardian, an accounting in which he listed as a credit the amount of commission claimed to be due plaintiff. The account in question was listed as follows:

"Services of C. C. Jaynes in securing buyer for 55 acres, $1,500."

Later, August Petoskey submitted a further accounting and credited himself with the said amount in the following manner:

"May 7, 1936, C. C. Jaynes, Services on sale of 55 acres, $1,500."

In March, 1942, plaintiff filed a bill of complaint in the chancery court of Wayne county asking for a decree for the sum of $1,500 and certain injunctive relief pending the collection of the above sum.

Each of the defendants filed an answer to the bill of complaint and asked for dismissal of the same, alleging that the so-called agreement is void under the statute of frauds (3 Comp. Laws 1929, § 13417 [Stat. Ann. § 26.922]). The trial court held that there was no personal liability against August Petoskey and that the so-called agreement was void as being contrary to the statute of frauds, and dismissed plaintiff's bill of complaint. Plaintiff appeals.

The principal question in this case relates to the statute of frauds, 3 Comp. Laws 1929, § 13417 (Stat. Ann. § 26.922), and reads as follows:

"In the following cases specified in this section, every agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized, that is to say:   *   *   *

"5. Every agreement, promise or contract to pay any commission for or upon the sale of any interest in real estate."

The statute provides that the following items must appear in the writing in order that it be valid: (1) a memorandum of an agreement or promise; (2) signature of the party to be charged, or his authorized agent; and, (3) an indication that it relates to payment of a commission for the sale of an interest in real estate.

In *Mead* v. *Rehm,* 256 Mich. 488, plaintiff, a real estate broker, brought suit against George H. Rehm, John Rehm and Grace Rehm for a commission growing out of the following agreement:

"I hereby agree to pay R. T. Mead a commission of five per cent. on the sale price of the Putnam resort property. Signed, George H. Rehm, Putnam, Sand Lake, Michigan."

John and Grace Rehm did not sign the agreement and denied authorizing George H. Rehm to make the agreement sued upon. We there said:

"While the statute does not expressly state that one assuming to execute the contract for another must have written authority to do so, yet it does state that he must be lawfully authorized to sign

the name of another. This agreement was not signed by John and Grace Rehm, neither did George Rehm sign their names thereto. If John Rehm may be held liable under the claimed verbal authority, then the evil the statute was intended to prevent will be present, and one who cannot be held liable on a verbal promise to pay a commission would be worse off than before the statute, for his liability would depend upon the promise of one asserting verbal authorization. A verbal agreement to pay the commission is rendered absolutely void by the statute, and there can be no recovery on *quantum meruit*, even though the service was rendered and accepted.''

In *Dodge* v. *Blood*, 299 Mich. 364 (138 A. L. R. 322), we held that the agent need not have written authorization in order to bind his principal, and adopted the American Law Institute rule as promulgated in 1 Restatement, Agency (1933), § 153:

''For the purpose of satisfying the provisions of a statute requiring a note or memorandum to be signed by the party to be charged or by his agent, a memorandum signed by a *properly authorized* agent with or without indication of the existence or identity of the principal is sufficient to charge the principal.''

In the *Dodge Case, supra,* the pertinent part of the section reads: ''or his agent in that behalf'' (2 Comp. Laws 1929, § 9443 [Stat. Ann. § 19.244]), while in the case at bar the pertinent part of the section reads: ''or by some person by him thereunto lawfully authorized'' (2 Comp. Laws 1929, § 13417 [Stat. Ann. § 26.922]).

The rule adopted in the *Dodge Case, supra,* relates to a statute different than the statute under consideration in the case at bar and must necessarily be limited to that statute.

The purpose of the statute (3 Comp. Laws 1929, § 13417), is to require an admission in writing that the person signing it, either himself or his lawful attorney or agent, is making a specific promise to pay. In the case at bar the writings are not signed by the estate or its representative. Moreover, there is no written authorization from Rudolph Petoskey and Hulda Petoskey conferring upon August Petoskey authority to make the agreement.

The writings are signed by a party whose interests in this particular instance are adverse to the interests of the estate, and do not show that August Petoskey assumed the liability of the promise.

Plaintiff's theory that August Petoskey's personal liability arises from his breach of implied warranty of authority to enter into the agreement would, if recognized, nullify the effect of the ruling in the *Mead Case,* and the evil which the statute intended to prevent would still be present.

The writings cannot be regarded as a promise to pay the debt or obligation of another, as the two papers taken as a whole sought to charge the estate with the debt, nor is there anything in them to show any promise on the part of August Petoskey to stand as guarantor if the estate did not pay. In our opinion the writings are insufficient to take the case out of the statute of frauds as they fail to show a promise or agreement of the parties to be charged. Our decision in this matter applies to the estate of Rudolph Petoskey and Hulda Petoskey as well as to the personal liability of August Petoskey.

The decree of the trial court is affirmed, with costs to defendants.

NORTH, C. J., and STARR, WIEST, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred.