ANN ARBOR BANK v STEGEMAN

OPINION OF THE COURT

1. JUDGMENT—SUMMARY JUDGMENT—ISSUE OF FACT—COURT RULES.
   Summary judgment was proper where an examination of the
   record and briefs discloses that there was no genuine issue as
   to any material fact (GCR 1963, 117.2).

CONCURRENCE IN PART, DISSENT IN PART BY HOLBROOK, J.

2. JUDGMENT—SUMMARY JUDGMENT—ISSUE OF FACT—COURT RULES.
   *A trial court improperly granted summary judgment to a plaintiff
   where the record reveals an undecided material issue of fact
   (GCR 1963, 117.2).*

Appeal from Washtenaw, Ross W. Campbell, J.
Submitted Division 1 March 1, 1973, at Lansing.
(Docket No. 14530.) Decided April 26, 1973.

Complaint by the Ann Arbor Bank against John
C. Stegeman and Lois U. Stegeman for the balance
due on a promissory note. Summary judgment for
plaintiff. Defendants appeal. Affirmed.

*Burke, Ryan, Rennell, Foster & Hood,* for the
plaintiff.

*Dyer, Meek, Ruegsegger & Bullard* (by *Barry L.
King),* for the defendants.

Before: DANHOF, P. J., and HOLBROOK and BASH-
ARA, JJ.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 61 Am Jur 2d, Pleading §§ 359–363.

DANHOF, P. J. Plaintiff brought this action to recover the balance due on a promissory note dated September 1, 1967 and signed by the defendant, John C. Stegeman, individually and as attorney in fact for Lois U. Stegeman, his wife. Both parties moved for summary judgment pursuant to GCR 1963, 117.2. The court granted summary judgment for the plaintiff and defendants appeal.

An examination of the record and briefs discloses that there was no genuine issue as to any material fact and summary judgment for the plaintiff was proper.

Affirmed, costs to the plaintiff.

BASHARA, J., concurred.

HOLBROOK, J. *(concurring in part, dissenting in part).* This separate opinion is being written because the writer believes that there is one issue not determined by the trial court which should be remanded to it for that purpose.

This is the third issue raised by defendant Lois U. Stegeman:

"Is a wife obligated to pay debt executed by her husband under a power of attorney dated July 12, 1961, authorizing the husband to 'borrow money in my name and to pledge my securities and other personal property for such loans' when the proceeds of the borrowing are not used for her personal estate?"

This issue is predicated on an affirmative defense filed by the defendant Lois U. Stegeman which is contained in the answer as follows:

"AFFIRMATIVE DEFENSES
"1. Defendant, Lois U. Stegeman, alleges as an affirmative defense that the promissory note was signed by John C. Stegeman as her attorney-in-fact and was not

signed by her in any capacity. Defendant, Lois U. Stegeman, further asserts that this is a violation of the statute of frauds and was done improperly under the power of attorney which she has granted to defendant, John C. Stegeman."

The defendant Lois U. Stegeman in her brief argues in part as follows:

"John C. Stegeman signed a promissory note as attorney in fact for his wife under the terms of a power of attorney which she signed on July 12, 1961. The power of attorney specifically grants to Mr. Stegeman the power 'to borrow money in my name and to pledge my securities and other personal property for such loan'. A power of attorney must be strictly construed.

" 'It is a firmly established rule, frequently reiterated, that powers of attorney are strictly construed and cannot be enlarged by construction. Accordingly, a power of attorney which specifies the acts which may be performed may not be extended by construction so as to authorize the performance of other acts not mentioned. * * * ' 1 Callaghan's Michigan Civil Jurisprudence, Agency, § 187, p 309.

"This rule was also summarized in *Bergman v Dykhouse,* 316 Mich 315, 319 (1946) as follows:

" 'It is elementary that powers of attorney are strictly construed, cannot be enlarged by construction, and that "authority to sell real estate must ordinarily be conferred in clear and direct language." 1 Mechem on Agency (2d ed), § 802.

" 'See, also, *Penfold v Warner,* 96 Mich 179 (1893) (35 Am St Rep 591); *Parkhurst v Trumbull,* 130 Mich 408 (1902); *Magilavy v Fekete,* 251 Mich 518 (1930); *Long v City of Monroe,* 265 Mich 425 (1933); *People v Etzler,* 292 Mich 489 (1940); *Jaynes v Petoskey,* 309 Mich 32 (1944); and 3 CL 1929, § 13411 (Stat Ann § 26.906.)'

"The power of attorney does not grant to John C. Stegeman the authority to borrow funds for his own personal use and to pledge his wife's personal estate for this purpose. The language is limited to authority to borrow money in the name of Lois U. Stegeman and not

for the benefit of John C. Stegeman. This is the plain and unabiguous terminology of the power of attorney and therefore John C. Stegeman, as attorney in fact, had no authority under the aforesaid power of attorney to borrow funds for his own personal use and to pledge the credit of Lois U. Stegeman for this purpose. This is true whether or not the relationship of husband and wife or the law of coverture is applicable."

The plaintiff argues in its brief in opposition to defendant Lois U. Stegeman's position in part as follows:

"In the present case, Defendant Lois U. Stegeman signed an extremely broad Power of Attorney to her husband, Defendant John C. Stegeman, which, among other things, authorized him *'to borrow in my name and to pledge my securities and other personal property for loans.'* Said Power of Attorney also authorized John C. Stegeman,

" '  *  *  *  to do business with banks and particularly to endorse all checks and drafts made payable to my order and collect the proceeds;  *  *  *  to collect and receive all sums of money  *  *  *  now due or which may hereafter become due and owing to me;  *  *  *  to sell, assign and transfer stocks, bonds, securities and other personal property standing in my name or belonging to me;  *  *  *  to execute, acknowledge and deliver in my name, deeds, grants, mortgages, land contracts, releases, satisfactions, and other instruments relating thereto;  *  *  *  to commence, defend, settle, and compromise actions and proceedings in my name;  *  *  *  to do and perform all and every act and thing whatsoever necessary in his opinion to be done in the premises as fully, to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney may do pursuant to this power.'

"Lois U. Stegeman's authorized signature appears on said document under date of July 12, 1961.[5] In addition, said Power of Attorney reveals that it was recorded with the Washtenaw County Register of Deeds in Liber 955, Page 83, on July 13, 1961. It was Mr. Stegeman's

testimony at his deposition that said Power of Attorney was prepared for Mrs. Stegeman's signature by his attorneys.[6] It was his further testimony at his deposition, that he had used said Power of Attorney on more than one occasion in the past, in obtaining loans from Plaintiff.[7] It was Mrs. Stegeman's testimony at her deposition that she 'assumed' that pursuant to said Power of Attorney her husband intended to borrow money in her name at various times.[8]

"Based on the Power of Attorney itself John C. Stegeman had the specific right 'to borrow in my (Lois U. Stegeman) name.' Therefore, there can be no question but that John C. Stegeman had the authority to sign his wife's name to the note in question."

---

"[5] Deposition of Lois U. Stegeman, p 2.
"[6] Deposition of John C. Stegeman, p 10.
"[7] Deposition of John C. Stegeman, p 9.
"[8] Deposition of Lois U. Stegeman, p 4."

---

The plaintiff's motion for summary judgment was filed pursuant to GCR 1963, 117.2. The applicability of this court rule is as set forth in *Waterview Associates, Inc v Lawyers Title Ins Corp,* 30 Mich App 687, 689–690 (1971). It appears to this writer that the record below reveals an undecided material issue of fact.

The case of *Detroit Newspaper Industrial Credit Union v McDonald,* 9 Mich App 146 (1967), and Const 1963, art 10, § 1, would justify the trial court's grant of summary judgment had the power of attorney of the defendant Mrs. Stegeman to her husband been executed subsequent to January 1, 1964, the effective date of the 1963 Constitution. There does not appear to be any legal precedent as to the effect that the 1963 Constitution has on a power of attorney executed prior to its effective date. It would appear to this writer without ruling on the issue that said Constitution does not enlarge the effect of a prior executed power of attor-

ney.[1] The effect of this power of attorney at the time it was given in 1961, is exactly the same as she claims for it today. *Koengeter v Holzbaugh,* 332 Mich 280 (1952). The defendant Lois U. Stegeman may very well have a vested right under the law as it stood when she executed the power of attorney.

I would therefore affirm in all particulars except as to the individual liability of the defendant Lois U. Stegeman which matter should be remanded to the trial court for determination. I so vote.

---

[1] Const 1963, Schedule and Temporary Provisions, § 2, is significant on this point. It reads: "All writs, actions, suits, proceedings, civil or criminal liabilities, prosecutions, judgments, sentences, orders, decrees, appeals, causes of action, contracts, claims, demands, titles and rights existing on the effective date of this constitution shall continue unaffected except as modified in accordance with the provisions of this constitution." It is not clear from this provision whether or not the 1963 Constitution as written was intended to affect the rights under a previously executed power of attorney. If the writers of the 1963 Constitution intended such rights to be affected by this provision, this provision may very well violate the 14th Amendment of the U. S. Constitution. See cases collected at 16 CJS, Constitutional Law, § 216, p 1178, footnote 85. *See also Permann v Knife River Coal Mining Co,* 180 NW2d 146 (ND, 1970) for the rule that state constitutional provisions may not operate retrospectively to abrogate or otherwise affect property rights that are vested at the time of their adoption.