### John Minock and Robert Hadden v. George E. Shortridge et al.

*Liability of minors on mercantile contracts: Ratification: Conditional confirmation: Liability for goods purchased before and sold after majority.* The mercantile paper of a minor is voidable at his election; not absolutely void.

The ratification of a minor's contract after the disability ceases relates back and renders the original contract binding from the time it was made.

An express or implied agreement of a party to terms which may create a conditional or restricted liability for or on account of a contract made during the minority of such party, is not a ratification of such contract. It may, if the condition be performed, become a new contract and as such become binding from its date.

Where a promissory note was given by a firm, one of the members of which was at the time a minor, a ratification of the liability of the firm after the majority of the minor will not be inferred from incidental and collateral circumstances in the face of the explicit declaration of the party that he did not intend to become bound.

A mercantile firm of which one of the members was a minor, having purchased goods during such minority, will be liable for the value, not exceeding the contract price, of the goods on hand at the time the minor becomes of age and afterwards sold by the firm.

*Heard July 7, 8.    Decided October 5.*

Error to Oakland Circuit.

This was an action of *assumpsit,* brought by George E. Shortridge, Thomas Rutherford, and Charles W. Shortridge in the Circuit Court for the County of Oakland, against John Minock and Robert Hadden. The plaintiffs declared upon the common counts and appended to their declaration copies of three promissory notes, all bearing date on the same day; and gave notice that they would give the notes in evidence under their declaration. The defendants pleaded the general issue. The cause was tried without a jury, before the Circuit Judge, whose written finding of

facts and his conclusions of law thereon are set forth in the record:

FINDING.—From the proofs in the case the Court finds as matters of fact that at the time and before giving the notes mentioned in the declaration in this cause, the plaintiffs were co-partners and doing business in the city of New York, in the wholesale trade. That the defendants were co-partners and doing a retail trade as merchants in the village of Holly, and that just prior to the 2d day of January, 1866, when the notes in controversy were given, the defendants purchased of the plaintiffs a bill of goods, for which the defendants gave their three several promissory notes, mentioned in plaintiffs' declaration, all dated the 2d day of January, 1866. The first for one hundred eighty-two and 6-100 dollars, due thirty days after date; the second for the sum of one hundred and eighty-three and 12-100 dollars, due sixty days after date, and the third for one hundred eighty-four and 18-100 dollars, due ninety days after date. I further find that at the time said notes were so given, the said defendant, John Minock, lacked four days of being twenty-one years of age; that they continued to do business for several weeks after such notes were so given, retailing the goods for which these notes were given, together with other goods in their store, doing the business in the usual style and way as co-partners; when they sold out their whole stock in hand, including whatever of the goods in question which had not as before stated been sold at retail.

I further find that subsequently and after all the said notes had become due, B. L. Ransford, the agent and attorney of the plaintiffs, called on defendant Minock in reference to the payment of these notes, and Minock told said Ransford that his partner Hadden ought to pay more than half the amount of the notes, and if he would do so

he would pay his share. I further find that after said Minock became of full age, he recognized the firm of Minock & Hadden, and paid other co-partnership obligations, which had accrued during the infancy of the co-partner Minock, and that they proceeded with the co-partnership business, the defendant Minock receiving his share of the profits and benefits accruing from the sale in the regular course of business, and participated in the final selling out of the whole stock in trade. I find no express promise to pay by defendant Minock after he became of age. That the final selling out of the whole stock in trade, and the dissolution of the co-partnership, occurred about the 1st of February, 1866.

CONCLUSIONS OF LAW.—From the above facts, I considered that the contract entered into by the infant Minock was not void but voidable only, and capable of being ratified after he should come of age. That by continuing in and proceeding with the business of the co-partnership, and participating in its benefits and profits, after he became of full age, and selling and converting the goods for which these notes were given to his and their own use after becoming of age, he ratified not only the contract of co-partnership with Hadden, but also ratified his contract to pay the notes in controversy, and is therefore liable in this action. The Court was requested to pass upon the following propositions of law presented by counsel for defendant Minock, as follows, to-wit:

I. That the defendant John Minock having been an infant at the time the promissory notes sued upon were given, and they having been given for goods purchased for trade, they are absolutely void as against the defendant John Minock, and incapable of ratification by him, and the plaintiffs cannot recover in this action against said defendant John Minock.

MINOCK *v.* SHORTRIDGE.

II. That promissory notes made by infants may be divided into three classes. *First.* Notes given for necessaries, which are valid without ratification. *Second.* Notes not given for necessaries nor for a purpose that cannot be a benefit to the infant, and these may become valid and binding by a ratification of the infant after he becomes of age. *Third.* Notes given for goods purchased by the infant for the purposes of trade, or given for any purpose that cannot be of any benefit to the infant; and this last class are absolutely void and incapable of ratification.

III. That in any event the plaintiff cannot recover against John Minock if he was under age when the notes were given, unless they show a ratification by him after he became of age, and that the burden of proof is upon the plaintiff to show such ratification.

IV. That the payment by John Minock and his co-partner Hadden, after Minock became of age, of certain other claims against the firm, does not amount to a ratification of the notes held by the plaintiffs, and upon which they seek to recover.

The Court *negatives* the first proposition, *affirms* the first and second subdivisions of the second proposition, and *negatives* the third subdivision of the same, *affirms* the third proposition, and the fourth proposition is covered by the conclusions of law, as before set forth by the Court.

A judgment having been entered on the finding, the cause now comes into this Court by writ of error.

*Fred. A. Baker,* for plaintiffs in error.

I. Promissory notes given by infants for goods purchased for the purposes of trade are absolutely void and incapable of ratification.—*Thornton v. Illingworth, 2 B and C., 826; Chandler v. McKinney, 6 Mich., 217.*

The plaintiffs therefore in the case at bar were not entitled to recover on the notes, even if the infant either expressly or impliedly agreed to pay them, after he became of age; and as the plaintiffs did not declare upon any mere contract of affirmance, the defendants were entitled to a judgment.

II. If this Court should now be of the opinion that promissory notes given by infants for goods purchased for the purposes of trade, are not absolutely void, but merely voidable, then we submit that the facts found by the Court below do not show a ratification of the notes in controversy by the infant after he became of age. The conditional promise made to the attorney for the plaintiffs was not a ratification sufficient to make him liable on the notes, because it does not appear that the condition was complied with.—*Everson v. Carpenter, 17 Wend., 419; Proctor v. Sears, 4 Allen, 95; Dunlap v. Hales, 2 Jones Law, 381.*

That a confirmation of the partnership does not render an infant partner liable for debts of the firm unknown to him at the time of the confirmation, is expressly ruled in *Crabtree v. May, 1 B. Mon., 289,* and whether he could even be held to pay such debts of the firm as were known to him at the time of the confirmation is doubted very much by the court per Metcalf J, in *Dana v. Stearns, 3 Cush., 372,* where it was observed that the decision in *Miller v. Sims* goes beyond *Good v. Harrison, 5 B. and Ald., 147,* and beyond any other decision that had come to the knowledge of the Court—*Collyer on Partnership,* §§ *528 and 529.*

Now it is abundantly settled in this country and in England, that a mere acknowledgment or part payment is not a sufficient ratification, but that an express promise voluntarily and deliberately made by the infant upon his arriving at the age of maturity, is necessary.—*Thrupp v.*

*Fielder,* 2 *Esp.,* 628 ; *Smith v. Mayo,* 9 *Mass.,* 62 *and* 64 ; *Ford & Phillips,* 1 *Pick.,* 202 ; *Tyler on Infancy and Coverture,* 87, *and cases cited ;* 1 *Parsons on Notes and Bills,* 74 *n.* (d.)

The next question to be considered is whether the defendant Minock ratified the notes by participating in the sale of such portion of the goods as remained undisposed of at the time he became of full age.

If an adult, after sufficient notice and a reasonable delay and opportunity, continues to retain property which he might restore, and for which he gave, when an infant, his promissory note, this, both on prevailing though not uniform authority, and on good reason, we should consider to be conclusive evidence of ratification.—*Aldrich v. Grimes,* 10 *N. H.,* 194 ; *Lawson v. Lovejoy,* 8 *Greenl.,* 405 ; *Cheshire v. Barrett,* 4 *McCord,* 241. But it would be otherwise if the property for which the note was given was disposed of, by the infant before he was of age.—*Thing v. Libbey,* 16 *Maine,* 55 ; *Robbins v. Eaton,* 10 *N. H.,* 561.

The Circuit Judge in his finding of facts states matter from which it is clear that a portion of the goods for which these notes were given, were sold and disposed of before Minock became of age, and we therefore insist that the defendant Minock did not ratify the entire notes, and that the plaintiffs were not entitled to recover the full amount of the same, but were only entitled to have a judgment rendered, *pro tanto* for that part of the notes for which the defendant Minock was legally liable.—*Earle v. Reed,* 10 *Met.,* 387.

In conclusion on this subject we insist that the defendant Minock is not liable on the notes, even if it does appear from the facts found by the Court below, that he ratified his contract after he became of age, because it is not shown that he knew at the time of the confirmation

that he was not liable. This has been frequently decided, and the doctrine seems to be recognized by all the elementary writers on the subject.—*Tucker v. Moreland, 10 Pet., 76; Reed v. Boshears, 4 Sneed, 118; Dunlap v. Hales; 2 Jones Law, 381; Hineley v. Margaritz, 3 Barr., 428; Norris v. Vance, 3 Rich. R., 164; 1 Parsons on Contracts, 323, n. (p.); Story on Contracts, § 69; Tyler on Infancy and Coverture, 96; Chitty on Contracts, 169, n. (K).*

III. The facts found do not support the judgment, because damages were not assessed, or the amount for which judgment should be entered otherwise determined.

We have already seen that one of the defendants was not liable for the full amount of the notes, and it was therefore absolutely necessary, in order to render judgment, to ascertain the extent of his liability. And the ambiguity óf the finding of facts in this respect is clearly objectionable, to correct which *error* would lie, even if the Circuit Judge had stated the amount of the judgment in his conclusions of law.

A written finding of facts must be treated in all respects as a special verdict, and error may be alleged that it does not support the judgment. And the Court can add nothing to a special verdict, or infer any facts which the jury have not inferred and set forth. The Court can only draw the legal conclusions from the fact found.—*People v. Wells, 8 Mich., 104.*

And where, as a conclusion of law, from a finding of facts, a Circuit Judge holds the plaintiff entitled to recover, the finding must contain all the facts and circumstances necessary to make out a cause of action.— *Wood v. La Rue 9 Mich., 158.*

If a special verdict is imperfect by reason of some uncertainty or ambiguity, or by finding less than the whole matter put in issue, or by not assessing damages, the

Court will award a *venire de novo.*—*10 Bac. Abr. (Bouvier's Ed.), 314, and cases cited.*

*Byron L. Ransford,* for defendants in error.

I. The question of whether the Court below erred in allowing the plaintiffs to introduce evidence to show a ratification by the defendant Minock, of the notes in question, after he became of age, depends entirely upon the fact whether the notes in controversy were *void,* or *voidable* only and subject to ratification.

It is insisted by counsel that because the notes in question were given for goods purchased for the purpose of trade, during the infancy of the defendant Minock, that they were absolutely void, as to him. I submit that I can see no good reason or justice for making a rule that goods purchased by an infant for the purposes of trade shall be governed by any different principle than goods purchased by an infant for any other purpose. *Barrows, J.* in the case of *Robinson v. Weeks, 56 Maine (September No., 1869, American Law Reg., p. 554),* lays down the rule of the division of infants' contracts under these general heads: 1. Binding—when for necessaries at fair rates. 2. Void—when manifestly and necessarily prejudicial, as of suretyship, gift, naked release, and the like. 3. Voidable—at the infant's election, either during minority or within a reasonable time after attaining majority, including all executory agreements, not for necessaries, and all executed contracts of this sort, when the other party can be placed substantially in *statu quo.* The better opinion, however, as extracted from later authorities, is that these contracts of infants are not absolutely void, but may be ratified after the infant attains to the age of majority.—*1 Par. on Contracts, 244, Note E.* The more recent authorities incline to

hold *all* (or all with a single exception) contracts of infants
to be voidable merely, not void, and that it is the privilege
and right of the infant *only* (not that of the Court) to
avoid or ratify his contracts. To the same point we cite.—
*Fonda v. Van Horn, 15 Wend., 631, 635; Cole v. Pennoyer,
14 Ill., 158; Cummings v. Powell, 8 Tex., 80; State v.
Richmond, 6 Foster (N. H.), 232; 1 Par. on Con., 244;
Miller v. Sims, 2d Hill (S. C.), 479; Tyler on Infancy,
Chap. 2.*

II. We insist that Minock's continuing in trade after
becoming of age, and paying other indebtedness of the firm,
he thereby ratified the co-partnership contract with his
partner Hadden.—*Miller v. Sims, 2 Hill (S. C.) 479.* The
fact that Minock continued in trade with his co-partner,
from the time he became of age, retailing the goods in
question, with other goods, in the usual way, and then
selling out the balance of the goods in question, not
already sold at retail, about the first of February, 1866,
some thirty days after becoming of age, is a sufficient rati-
fication of the notes in question, and he is jointly liable
with his co-partner Hadden.—*Henry v. Root, 33 N. Y. R.,
526, 554; Kline v. Beebe, 6 Conn., 494, 505; Boody v.
McKenny et al., 23 Maine, 517; Miller v. Sims, 2 Hill's
(S. C.), 479; Wilcox v. Roath, 12 Conn., 550; Martin v.
Mayo, 10 Mass., 137, 140; Heath v. West, 8 Foster (N. H.),
191; Bartholomew v. Finnemore, 17 Barb., 428; Boody v.
McKinney, 10 Shep., 517; Tyler on Infancy, Chap. 6.*

III. It is insisted by the plaintiff in error that the
finding of the Court below does not support the judgment,
because it does not assess damages, or otherwise determine
the amount due upon the notes in question. On the
written finding of the Court a judgment entered for the
plaintiffs below, for the sum of six hundred and ninety-
nine dollars and eighty-one cents damages over and above

his costs, this being a part of the record in the case, I can see no reason for a repetition of the amount due on the notes, the judgment being a sufficient assessment. The notes were introduced in evidence, and being proof of themselves, the Court had a right, and undoubtedly did compute the amount due on the notes himself.

IV. It is immaterial how many of the goods for which the notes were given were sold before, and how many after said defendant Minock became of age. If the Court found that any portion of the said goods remained in his hands, or were by him sold after he became of age, we may legally infer a ratification of the contracts, in the absence of any offer or expression of willingness to return the unsold goods at date of majority.—*Lawson v. Lovejoy, 8 Greenl., 405; Delano v. Blake, 11 Wend., 85.*

We think a disposition and practical effort of Courts has been to harmonize and improve the law of infancy; and I believe all agree that when the infant attempts to avoid an executed contract, or one executed on the part of the adult, he must replace the property received, and if he have any part of the property when he becomes of age, he must return it or he will be adjudged to have affirmed the contract.—*Boody v. McKenney, 23 Maine, 517; Deason v. Boyd, 1 Dana, 45; Kline v. Beebe, 6 Conn., 494, 505; Boyden v. Boyden, 9 Met., 519; Cheshire v. Barrett, 4 McCord (S. C.), 241; Robbins v. Eaton, 10 N. Hamp., 561; Richardson v. Boright, 9 Verm., 368; Henry v. Root, 33 N. Y. R., 526, 551.*

GRAVES, J.

On the 2d day of January, 1866, and for some time theretofore, the plaintiffs in error were doing business as partners in the sale of merchandize at Holly, in this state,

and gave their notes in question to the defendants in error for goods purchased of the latter shortly·before the date of the notes. When these notes were given Minock lacked four days of his majority. The firm continued in business as usual, retailing among others some portion of the goods for which the notes were given, until about the 1st of February, 1866, when they sold out the whole stock, including what remained of the bill purchased of defendants in error, and then dissolved. The Circuit Judge found that after Minock attained his majority he recognized the firm, paid some other co-partnership obligations, received his share of the profits and benefits which accrued from the sales in the regular course of business, and participated in the closing sale of the residue of the stock. He also found that Minock, after the notes became due, and which must have been after the dissolution, declared to the attorney for defendants in error, that Hadden ought to pay more than half of the notes, and that if he would do so he, Minock, would pay his share; but the Judge likewise found that Minock after coming of age made no express promise to pay. Upon these facts the Judge determined as matter of law that the notes were not void, but voidable only at the election of Minock, and were ratified by him.

It is objected by plaintiffs in error that the notes were void· as against Minock, but if not, that the facts found did not amount to a ratification.

If the contracts of Minock were nullities, there was of course nothing to be validated by any subsequent act or declaration of his, however formal and explicit, and evidence admitted to show a mere ratification was unauthorized, and the ruling that a ratification had been shown was erroneous. It is impossible to reconcile the cases on this subject. All or nearly all of the early authorities, as well as some of the modern ones, support the position taken by counsel for the

plaintiffs in error, that executory undertakings like the notes in question are void, but the tendency of judicial opinion has long been otherwise, and the clear weight of authority in this country is now in favor of holding the mercantile paper of minors voidable at their election, and not absolutely void. The authorities bearing upon the question are mostly collected in the text-books, and are too numerous to justify an attempt at citation.

Much confusion has undoubtedly arisen in respect to the engagements of minors, as well as in many other cases, either from an incautious use of the word "void" and "voidable," or their reception or application in a loose or inappropriate sense.

The executory contract of an infant, such as a promissory note, is not void in the sense of being a nullity, because it may be confirmed, but it has no binding force until it is confirmed. Being executory, and not binding until confirmed, it is said to be voidable, but as thus applied this word is to be understood in a sense quite different from that which belongs to it when applied to the executed contract of an infant.

The general rule is that an executed contract is binding until *avoided* by words or conduct which show that the party refuses longer to be bound by it. But when it is said that the executory contract of an infant is voidable, the idea represented is that the contract is susceptible of confirmation or avoidance by the promisor, though it is not binding until it is ratified.

There can be no ratification without the assent of the person to be charged. And where the liability of the party depends upon his acts done after becoming competent to give a binding assent, the nature and extent of the liability will depend upon what he assents to, as ascertained from his words or relevant circumstances, and he can be held

to no other or different engagement than such as he is found to have assented to. The case may show a ratification, or, failing to show that, it may disclose a different and distinct agreement, involving a liability indeed, but a liability quite unlike and remote from that produced by a ratification. When a ratification occurs it excludes all right to disavow the original undertaking, and makes it obligatory as against the defense of infancy. The new matter reaches back and renders the original contract binding from the time it was made, and the first agreement having in its entirety received the assent of the promisor after the ceasing of his disability, is made in all its parts the binding contract of the parties. The minor on coming of age, may, however, fail or decline to assent to a confirmation of the first agreement, but may be willing to make himself liable upon a new express or implied undertaking, based on the original consideration. He may, expressly or by implication, agree to terms which necessarily create a conditional, qualified, or restricted liability, and, in such case, the first agreement is not ratified by the second. A new agreement is constituted which is operative only from the time of its creation, and effective according to its nature. If the promise or act of the party after majority amounts to a conditional ratification, instead of a new substantive engagement, the contract made during minority may then be enforced, but not until the condition is fulfilled.

In the case before us the Court found that Minock made no express promise on coming of age, but when called on for payment by the attorney for defendants in error, which must have been subsequent to the conversion of the goods, and also to the dissolution, he took the position that Hadden ought to pay more than half of the amount called for by the notes, and stated that, if he would do so, he,

Minock, would pay his share. When it is considered that Minock expressly took this ground when called on for payment after his majority, and after the goods had been disposed of and the co-partnership closed, and that a ratification of the notes would have involved a liability on his part to pay the whole sum promised by the notes, it is very evident that he did not intend to bind himself to the undertaking evidenced by the notes. Indeed, these facts import in substance a refusal to be bound by the original agreement, and exclude any implication that he designed to invest it with any obligatory force. The transaction signified that he would not be liable for the whole sum as he would have been on ratification, but would only be liable for something less than half. The other circumstances relied on to raise an inference of ratification, should be considered in connection with the facts last mentioned. These circumstances preceded the express declaration of Minock, and do not appear to have been countenanced by him with any view to the subject of ratification. Whatever may be their effect as to his purpose to affirm his voidable agreement, they cannot outweigh the evidence of his dissent furnished by his express refusal. To hold otherwise would be to infer his assent from incidental and collateral circumstances, against his own declaration, directly called out by the plaintiffs below in an endeavor to obtain from him a confirmation. Neither can we infer from the recognition of the partnership, the continuance in business and the like, an intent to ratify the notes. These incidents, at the most, could only imply a subsequent assent to the former voidable undertaking in the absence of facts repugnant to such an implication. But in this case, when the attention of the party was directly and clearly called to the matter by defendants in error, as already stated, and he was

applied to by their agent for payment, he in substance refused to be bound by the notes.

I am therefore of opinion that the facts found do not establish a ratification of the notes. It would seem from the finding that a portion of the goods for which the notes were given was sold by plaintiffs in error before Minock became of age and the remainder after that time. No ground is discovered upon which a recovery could be claimed for the goods sold during Minock's minority. The acts of sale during that time would not imply a promise by him to pay the value of the goods, when his express promise, if made at the same time, would not be binding upon him, and there is no claim that after coming of age he made any express promise to pay for the goods. The disposition of what remained after Minock became of age could not have the effect to raise a promise by implication, to pay for the property sold before that time.

When a liability to pay for goods purchased for mercantile purposes during minority is implied from retention or sale after majority, it is confined to the goods which are retained or sold after that time. The principle appears to be that the party arriving at an age which makes him competent to bind himself, and being in a situation to exercise an option to return the goods and so disavow the purchase, or to keep or sell them, and so evince a design to stand as purchaser, his choosing to keep or sell is to be considered as implying a purpose to hold the position of purchaser and an election to be liable in that character. If the option does not exist, if the particular goods cannot be restored in consequence of their disposition during the minority of the party, the ground for implying a liability for such goods is wanting.

I think, however, that the facts found would, upon well

settled principles, bind both Minock and Hadden to pay the value, not exceeding the contract price, of so much of the goods, forming the consideration of the notes, as were disposed of *after* Minock became of age, and that a recovery therefor could be supported under the count in the declaration for goods sold and delivered.

The plaintiffs in error obtained them without payment, and, after Minock's majority, retained and sold them and pocketed the proceeds; and the circumstances imposed upon defendants in error a duty to pay for them. In such a case the law allows a recovery upon the theory that the parties undertook to do what it was their duty to do.

The defendants in error having elected to proceed against Minock and Hadden jointly, the amount recoverable could not go beyond the sum chargeable against Minock, nor beyond the contract price of the goods; but a recovery according to the value of the goods, not exceeding the agreed price, would be legally unobjectionable.

The finding furnishes no data for ascertaining the amount for which judgment should be rendered upon the principle stated, and therefore it will be necessary to order a new trial.

The other questions presented become immaterial.

The judgment must be reversed with costs, and a new trial ordered.

The other Justices concurred.