## WATZEL v. BEARDSLEE.

1. CONTRACTS—CONSIDERATION—MORAL OBLIGATION OF SON TO REPAY MONEY TO FATHER FOR EDUCATION.

    Money loaned by a father to his son for latter's higher education carried such a moral obligation to make repayment that when son reached his majority, ratified his agreement by promise then to repay, and made repayment in part, the father could invoke legal remedy to enforce repayment.

2. SAME—PAYMENT—RATIFICATION AFTER ATTAINING MAJORITY.

    Partial repayment by son of money borrowed from father for use in securing higher education, under agreement that it be used for sister's education, would not lessen legal effect of son's ratification of debt upon his reaching majority but would only reduce the amount of the debt.

3. FRAUDULENT CONVEYANCES—INSOLVENCY—CONSIDERATION.

    A deed of property to grantor's wife is valid as to creditors where it does not leave grantor insolvent, whether it was with or without consideration.

4. SAME—INSOLVENCY—BURDEN OF PROOF—EVIDENCE.

    In suit by trustee in bankruptcy to set aside conveyances of property whereby title passed from bankrupt through another to bankrupt's wife, plaintiff *held*, to have failed to sustain his burden of proof that grantor was insolvent or was rendered insolvent by the conveyances in question, in view of son's undisputed testimony as to amount of debt he owed father at time conveyances were executed.

    BUTZEL, C. J., and SHARPE and NORTH, JJ., dissenting.

Appeal from Ingham; Hayden (Charles H.), J. Submitted April 5, 1939. (Docket No. 26, Calendar No. 40,359.) Decided July 6, 1939. Rehearing denied September 6, 1939.

Bill by Paul Watzel, trustee in bankruptcy of Walter E. Beardslee, against Ella M. Beardslee to set aside transfers of real estate and for other relief. Decree for plaintiff. Defendant appeals. Reversed.

*Alexis J. Rogoski,* for plaintiff.

*Matthew R. Kaplan,* for defendant.

WIEST, J. August 12, 1935, Walter E. Beardslee was indebted to the First State Savings Bank of Muskegon Heights to the amount of $1,500, and interest thereon from October 22, 1931. August 12, 1935, Mr. Beardslee, for the purpose of conveying title to certain premises to his wife, defendant herein, executed a deed to Paul Watzel and, the same day, Mr. Watzel executed a deed to Ella M. Beardslee, and the conveyances were recorded. October 1, 1937, Mr. Beardslee filed a petition in bankruptcy, and October 12, 1937, was adjudged a bankrupt. October 25, 1937, the receiver of the First State Savings Bank of Muskegon Heights obtained a judgment and costs against Mr. Beardslee amounting to $2,151.87, and filed the same as a claim in the bankruptcy proceeding.

The suit at bar was brought in December, 1937, by the trustee in the bankruptcy proceeding to set aside the mentioned deeds vesting title in defendant as in fraud, hindrance and delay of Mr. Beardslee's creditors, because he was insolvent at the time and there was no consideration. Issues thereon were joined, proofs taken, and a finding made by the court that the deeds were without consideration, Mr. Beardslee was then insolvent and the conveyances operated in fraud of his creditors in the bankruptcy proceeding. Defendant reviews by appeal.

The question of whether Mr. Beardslee was insolvent in 1935, when he caused title to the real estate

to be vested in defendant, turns upon the validity of a claim of money due him from his son for the expense of college education.

William Walter Beardslee, the son, who was 21 years of age in 1931, testified:

"I first left home for school in the fall of 1928. All my expenses were paid by my father. Before going away to school I had a conversation with my father relative to the money he was spending on me at that time. Before going away to school, I had agreed to pay my father, in full, for the money which he would spend on my college education. When I came back from school after returning from Annapolis in June, 1934, I further agreed to make this payment, and in fact, I was all the more determined I would make the payment because of the conditions at home, which were not nearly so good as when I had gone to college first. I had agreed to pay my father in full for the expenditure he had been to in putting me through college, and I talked it over with him and these expenditures took in a private school I went to by the name of Swavely, in Virginia, which took in a year at that school, and spending money and vacation money and one thing and another, incidentals while at Annapolis, and we agreed upon a figure of $1,700 which I thought was very conservative. That agreement was made in June, 1934.

"When I returned from Annapolis, I had nearly $1,100 in cash, so I wanted to make a substantial payment, and I made a substantial payment at that time to my father of $500, leaving a balance of $1,200. I started to work immediately and I had an income in addition to the money which was left over from Annapolis, and I asked him if it would be agreeable if he would let me pay this money to him by helping him directly in such ways as putting my sister through college, and I told him I wanted it specifically understood that that was in payment of the debt, and he agreed, he said that would be satisfac-

tory, and I continued the payment. The next payment I made was in the early part of 1935, I believe in the spring of 1935, and that was paid in cash, $125. I made no other payments besides that $625 before August 12, 1935. I afterwards repaid the entire $1,075. I repaid it at irregular intervals starting with the fall college term of 1935, that would be September, 1935, and I completed payment by the summer of 1937. It was all paid up in the summer of 1937. I then completed payment.''

The circuit judge in an opinion stated that:

''However, the bankrupt did give an estimate of his assets and liabilities as of the date of the transfer in issue. His estimated assets were $3,331.02, of which $800 would be exempt. At that time his liability or indebtedness to the bank aggregated $1,899.58, and he owed other debts in the neighborhood of $100. Taking these figures at their face value would leave an excess of assets over liabilities of $531.54.

''I am not impressed that the item listed as 'claim against son,' in the sum of $1,075, should be considered in arriving at the total assets of Walter E. Beardslee at the time in question. So far as the record shows it was never evidenced by note or other formal writing. Considering its inception, the relationship of the parties, and the manner in which it was ultimately discharged, it seems to me that it was strictly a recognition of a moral obligation. It seems to me that the promise, if made as alleged, was based entirely upon past consideration and under the general rule applicable, and the circumstances under which it was given would not constitute a binding promise upon the son. 13 C. J. p. 359. It appears that from Beardslee's own statement he was insolvent at the time of the transfer in question.''

The loan to the son was such as, under the promise made by the son at the time, carried a moral obliga-

tion to make repayment, and the son, upon reaching his majority, ratified the obligation by promise then to repay, followed by repayment in part prior to the conveyances in question. Such ratification made repayment an obligation upon which the father could invoke legal remedy. The fact that part payment was made in pursuance of an agreement with the father that it would be employed in education of a daughter does not in any degree lessen the legal effect of the ratification of the debt, and serves only in reduction of the amount thereof.

If the deed did not render Mr. Beardslee insolvent it must stand, whether with or without consideration.

The burden of showing either that the grantor was insolvent or rendered insolvent by the conveyance was upon plaintiff, *Jaffe* v. *Ackerman,* 279 Mich. 304, and, under the proofs, was not established.

The son desired a higher education than that required to be furnished by the father and, in order to obtain the advantages thereof, agreed to repay his father for the expense. The father advanced the money. If it be held that the obligation to repay was not a legal one because of the minority of the son, because voidable at his election upon reaching majority (upon which there is a conflict of authority), it does not follow that the son could not recognize and ratify the obligation upon reaching his majority, as he did, and render the same an enforceable legal obligation.

The testimony of the son is undisputed and the father rightly listed the obligation of the son as a legal asset, and the circuit judge was in error in holding otherwise. See *Minock* v. *Shortridge,* 21 Mich. 304; *Holmes* v. *Rice,* 45 Mich. 142; *Lynch* v. *Johnson,* 109 Mich. 640.

Plaintiff failed to establish the insolvency of Mr. Beardslee at the time of, or by reason of, the execution of the deed in 1935.

The decree is reversed and the bill dismissed, with costs to defendant.

BUSHNELL, POTTER, CHANDLER, and MCALLISTER, JJ., concurred with WIEST, J.

BUTZEL, C. J. (*dissenting*). The decree of the lower court should be affirmed. On August 12, 1935, the date of the conveyance in question, Walter Beardslee admittedly had liabilities of $1,999.58, $1,899.58 of which was due the receiver of the First State Savings Bank of Muskegon. Beardslee testified his assets at that time aggregated $3,335.67, which would leave a net worth of $1,336.09. Since insolvency under the fraudulent conveyance act is determined on the basis of nonexempt assets (3 Comp. Laws 1929, § 13392 [Stat. Ann. § 26.881]), there must be deducted from the net worth $500, representing exempt household furniture, and $300, the claimed value of an automobile used in his business. Of the remaining assets, $500 represented the value of the household furniture not subject to the exemption, and for which, as Beardslee himself acknowledged, there was little, if any, market demand; $121.02 constituted a claim against a defunct national bank; $564.65 was a credit in Beardslee's favor on the books of Hulbert, Warren & Chandler, being a deposit on a margin account for the purchase and sale of grain. The record discloses circumstances which make the claimed value of each of these assets appear highly conjectural at best. It would be wholly unrealistic to attribute to them a "salable value" within the meaning of 3 Comp. Laws 1929, § 13393 (Stat. Ann. § 26.882). If they are excluded from consideration, Beardslee's total assets, with the exception of the alleged claim against his son, were only $1,850, almost $150 less than his outstanding liabilities. Because the "present fair salable value

of his assets," exclusive of the alleged claim against the son, was less than the amount required to pay his probable liability on his debts, Beardslee was clearly insolvent under the statutory definition contained in 3 Comp. Laws 1929, § 13393 (Stat. Ann. § 26.882):

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

The weakness of Beardslee's financial condition is thus strikingly emphasized by the fact that the alleged obligation of his son is crucial to his status as a solvent or insolvent debtor.

What is the nature of this claim? It consists of the promise of William Walter Beardslee to repay his father for the expenses of his education at a preparatory school and at college. When the alleged promise was first made, the son was a minor and, of course, legally incapable of binding himself by contract. It is contended that when he became of age, however, he verbally ratified the promise. The principal testimony supporting that conclusion is the following statement of the son:

"I asked him (the father) if it would be *agreeable* if he would *let* me pay this money to him directly by *helping* him in such ways as putting my sister through college, and I told him I wanted it specifically understood that that was in payment of the debt, and he agreed."

The parties considered neither the time nor the amount of the payments to be made. If it was "specifically understood" that the debt was to be retired by putting the sister through school, it might very well be that the promise was for a personal performance conditioned on the continued college attendance

of the sister. In any event, the testimony reveals not a solemn ratification of an antecedent debt, but a statement of the son's willingness to assist his father and an agreement as to the manner in which it should be done.

The indefinite nature of the arrangement is confirmed by its actual execution. As the sister required tuition to be paid or books and clothes to be purchased, the brother advanced the necessary funds. Although the promise was alleged to have been made in June, 1934, when $500 was paid directly to the father out of the son's college savings, the only payment made for the sister's benefit up to the time of the conveyance was in the early part of 1935. At that time William was earning $150 a month. The clear inference from the testimony of father and son is that the son would not have been subjected to legal proceedings or any other pressure had he lost his job or become unable to make payments to the father or sister, when and if demanded. As a result, a not unreasonable interpretation of the son's promise is that it amounted at most to a conditional ratification, an engagement to pay when able, which would be, in the hands of the father, an asset subject to a serious contingency. See 31 C. J. p. 1063, § 155. Or if unconditional, there is still grave doubt that it was a *bona fide* ratification of a promise made during infancy. I agree with the circuit judge who stated:

"I am not impressed that the item listed as 'Claim against son,' in the sum of $1,075, should be considered in arriving at the total assets of Walter E. Beardslee at the time in question. So far as the record shows it was never evidenced by note or other formal writing. Considering its inception, the relationship of the parties, and the manner in which it was ultimately discharged, it seems to me that it was strictly a recognition of a moral obligation."

The law has always looked suspiciously upon transactions between members of the same family wherein lurk the dangers of fraud on creditors. *Bentley* v. *Caille,* 289 Mich. 74. Likewise, when finding ratification by an infant of an executory promise to pay money, a clear showing has been demanded. See cases cited in 31 C. J. p. 1065, notes 64–70. Before both principles are here overturned at the expense of *bona fide* creditors, there should be clear evidence that a *bona fide* claim existed against the erstwhile minor son. Otherwise, we bestow a sanction upon fraudulent conveyances by debtors with grateful or obliging families who can create domestic obligations at will to swell the apparent assets of the debtor's estate.

Moreover, even if the contract is held binding, the fact that it was subsequently performed by the son does not prove that it was an asset which had a "present fair salable value" at the time the real estate was transferred without consideration to the defendant. Founded on a mere oral promise to pay back a sum of money in indefinite amounts and at indefinite intervals, this doubtful obligation could have no market value, book value, or other salable value within the contemplation of this section. See Glenn, Fraudulent Conveyances (1st Ed.), p. 365, and cf. *Schmitz* v. *Wenzel,* 166 Minn. 435 (208 N. W. 184). Whatever worth it had, it could not have substantially increased Beardslee's ability to pay his creditors the debt he owed them. In that event, the law does not permit him to give away a part of his property without consideration. See Glenn, Fraudulent Conveyances (1st Ed.), p. 366.

The decree of the lower court should be affirmed, with costs to plaintiff.

SHARPE and NORTH, JJ., concurred with BUTZEL, C. J.