DEAN v. TORRENCE.

1. Evidence—Examination of Opposite Parties.
   Plaintiff in suit commenced by judgment creditor is bound by undisputed testimony of defendants called by plaintiff (3 Comp. Laws 1929, § 14220).

2. Fraudulent Conveyances—Judgment Creditor's Bill—Bill in Aid of Execution.
   Suit by judgment creditor who had not levied upon debtor's property nor foreclosed mortgage securing note upon which judgment was obtained to set aside assignments of corporate

stock by debtor to his wife was not a bill in aid of execution requiring levy of execution as prerequisite to the filing of the bill (3 Comp. Laws 1929, § 14617).

3. CREDITORS' SUIT—PRIMA FACIE CASE—BURDEN OF PROOF.
    In proceedings by bill in aid of execution, the burden of proof shifts to the defendant when plaintiff has made a prima facie case by putting in evidence the judgment with levy indorsed thereon and proof of the conveyance complained of (3 Comp. Laws 1929, § 14617).

4. SAME—LEVY UNNECESSARY BEFORE COMMENCING SUIT.
    A levy of execution is not necessary before instituting suit by judgment creditor's bill (3 Comp. Laws 1929, § 14617).

5. FRAUDULENT CONVEYANCES—FRAUD—BURDEN OF PROOF.
    In suit commenced by judgment creditor's bill to set aside assignments of stock by debtor to his wife because of alleged fraud, the burden was upon the plaintiff to prove such fraud (3 Comp. Laws 1929, § 13392 *et seq.*).

6. SAME—FRAUD—EVIDENCE.
    In suit commenced by judgment creditor's bill wherein fraud is alleged, there must be competent proof of the charges made, mere allegations and conjectures as to fraud being insufficient (3 Comp. Laws 1929, § 13392 *et seq.*).

7. SAME—HUSBAND AND WIFE—BURDEN OF PROOF.
    Although transactions between husband and wife should be closely scrutinized when the rights of creditors are involved, the burden is upon him who seeks to set aside a transaction as fraudulent as to creditors to adduce evidence in support of his claim (3 Comp. Laws 1929, § 13392 *et seq.*).

8. SAME—EVIDENCE—INTENT—INSOLVENCY—CONSIDERATION.
    In suit to set aside assignments of stock as fraudulent to creditors, it was necessary under the fraudulent conveyance act either to prove actual intent to defraud or that the transfer made the judgment debtor insolvent or left him with unreasonably small capital to carry on his business and that there was no fair consideration for the assignment (3 Comp. Laws 1929, § 13392 *et seq.*).

9. SAME — EVIDENCE — INSOLVENCY — CONSIDERATION — BURDEN OF PROOF.
    In suit by judgment creditor to set aside assignments of stock by debtor to his wife, alleged to have been made in fraud of creditors, if plaintiff establishes that the assignments rendered

the assignor insolvent or with an unreasonably small capital to carry on his business and also that there was no fair consideration for the assignments, then the order of proof would have shifted to defendant to go forward with the evidence that the consideration was in fact fair and adequate (3 Comp. Laws 1929, § 13392 *et seq.*).

10. SAME—INSOLVENCY—CONSIDERATION—EVIDENCE.

Bill was properly dismissed in judgment creditor's suit to set aside debtor's assignments of stock to his wife where there is no proof as to financial condition of debtor, that the assignments left him insolvent or with an unreasonably small capital with which to carry on his business, or that he did not receive a fair consideration for the stock, and it is shown that the wife had invested $15,000 in the company directly or indirectly by way of loans or property (3 Comp. Laws 1929, § 13392 *et seq.*).

11. SAME—PAYMENT OF INTEREST—INTENT—EVIDENCE.

In judgment creditor's suit to set aside debtor's assignments of stock to his wife, payments on the note and mortgage securing it for a year after the alleged fraudulent transfer to some extent negatived the implication of bad faith on the part of the debtor and his wife (3 Comp. Laws 1929, § 13392 *et seq.*).

12. APPEAL AND ERROR—SUPREME COURT—RECORD—FRAUDULENT CONVEYANCES.

In judgment creditor's suit to set aside assignments of stock in close corporation, although Supreme Court is inclined to look askance at assignments by judgment debtor to his wife where he was incapacitated by illness for many years and continued to draw salary as president of the corporation, where it also appears that the wife had apparently been the moving factor in connection with both the financing and management of the company, the court will not go beyond the record which fails to show actual intent to defraud on the part of defendants and fails to show the assignments left the debtor insolvent or with an unreasonably small capital to carry on his business or that the consideration was inadequate (3 Comp. Laws 1929, § 13392 *et seq.*).

Appeal from Oakland; Hartrick (George B.), J. Submitted June 5, 1941. (Docket No. 27, Calendar No. 41,618.) Decided September 2, 1941.

Bill by William W. Dean, administrator of the estate of Mary E. Dean, deceased, against Joseph Torrence and others to set aside a transfer of stock as fraudulent and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*George Henry Flynn* (*B. Wolleman*, of counsel), for plaintiff.

*Atkinson, Donnelley & Lyon* (*Pelton & McGee*, of counsel), for defendants.

STARR, J. On October 23, 1928, plaintiff's decedent, Mary E. Dean, loaned defendants Joseph E. Torrence and Katherine Torrence, his wife, $6,500 upon their promissory note, secured by real-estate mortgage on 5.6 acres of land in Oakland county, held by Mr. and Mrs. Torrence as tenants by the entireties.

Payments were made on this note and mortgage to and including April, 1932. Mary E. Dean later began law action on such note against defendants Joseph E. and Katherine Torrence, and on January 30, 1936, obtained judgment for $8,480.69 and costs against Joseph E. Torrence. Mrs. Torrence was relieved from liability on note under the technical defense of coverture. No proceedings were taken to foreclose the mortgage securing such note. On January 8, 1937, execution was issued on such judgment and returned unsatisfied. No levy was made on either real or personal property.

The bill of complaint in the present suit was filed December 9, 1939. The bill alleges entry of judgment against Joseph E. Torrence and the issue and return of execution unsatisfied; that when the loan of $6,500 was made from Mary E. Dean, October 23, 1928, de-

fendant Joseph E. Torrence owned 499 shares of stock of Torrence Oil Company; that on March 25, 1932, Torrence executed a pretended assignment of this stock to his wife, Katherine; that such assignment was fraudulent and void as to plaintiff, a creditor, and that Mrs. Torrence held such stock in trust for her husband; that the Torrence Oil Company was incorporated for the purpose of holding property and assets in trust for defendant Joseph E. Torrence and for the purpose of defrauding plaintiff. The bill prayed for discovery, accounting, and appointment of receiver, and that the assignment of Torrence Oil Company stock from Joseph Torrence to Katherine Torrence be declared fraudulent and void.

Defendants Joseph E. Torrence and wife answered, admitting the unpaid judgment, but expressly denying all allegations of fraud and denying any property was held in trust for Joseph E. Torrence. Their answers affirmatively alleged that Katherine Torrence had paid full consideration to her husband and the Torrence Oil Company for the stock of the oil company subscribed for by Joseph E. Torrence, and afterwards assigned and issued to her. Separate answer by the oil company denied it held any property in secret trust for Joseph E. Torrence and alleged that it had, at all times, been indebted to Katherine Torrence for money advanced by her to continue the company as a going concern.

Mary Dean died, and plaintiff, as administrator of her estate, was substituted as plaintiff. Plaintiff's counsel stated at the opening of the trial that the bill of complaint was "the usual judgment creditor's bill." The only witnesses called by plaintiff to establish the allegations and claims of fraud were defendants Joseph E. and Katherine Torrence, and plaintiff

is bound by their testimony, which is not refuted.*
*Swank* v. *Croff,* 245 Mich. 657; *In re Estate of Taylor,*
271 Mich. 404; *Darling* v. *Hurst,* 39 Mich. 765. Joseph
E. Torrence was ill and unable to testify. By agree-
ment of counsel, the testimony given by Torrence at
a former examination before a circuit court commis-
sioner was read in evidence.

The Torrence Oil Company was incorporated July
7, 1928, with an authorized capital stock of $15,000
divided into 1,500 shares of $10 each, of which 750
shares were subscribed. The articles of incorpora-
tion show 449 shares subscribed by Joseph E. Tor-
rence, 300 shares by Katherine Torrence, and one
share by R. M. Connor. Certificates of stock were
not issued at the time of organization in 1928. On
May 5, 1931, certificate for 449 shares was issued
to Joseph E. Torrence, and he assigned 444 shares
to his wife on the same date, and five shares to her
at a later date not disclosed by the record. For the
purpose of this opinion we will assume the entire 449
shares were assigned to her about May 5, 1931.

Mrs. Torrence testified regarding her properties
and her investment in the Torrence Oil Company in
part as follows:

"The 449 shares of stock in question were issued
to Mr. Torrence on May 5, 1931; they were not re-
assigned to me but were issued to me the same
day. * * *

"When I and Mr. Torrence borrowed this money
from Mrs. Dean, we owned a home in Birmingham as
tenants by the entireties, and I own 5.6 acres of prop-
erty in Bloomfield. I also own a summer place on
Higgins Lake which was my own property. When
the corporation was formed, the records show that

---

* See 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915).—Re-
PORTER.

there were $1,500 in cash paid in and $6,000 in property. The property consisted of tanks and equipment in Birmingham put in at $3,000 and leasehold and equipment on Epworth boulevard at $3,000. I supplied the money to pay for the tanks and other equipment. I haven't the exact figures with me and can't say whether it was over $3,000 or not. I had paid out for leasehold interest on Epworth boulevard about $4,000, over $3,000 at any rate. I haven't an exact record of the cash I invested in the oil company but it was at least $15,000 over and above the investment in the Epworth boulevard property and the Birmingham tanks."

Mrs. Torrence testified further that she received as much benefit from the money borrowed from Mrs. Dean as Mr. Torrence did, as the money was loaned to the Torrence Oil Company; that she purchased and paid for the 5.6 acres covered by the mortgage to plaintiff's decedent; that Mr. Torrence now has no property in his name; that he is president of the oil company and receives a salary of $200 a month; and that she is also an officer of the oil company and receives a salary of $200 a month.

From the transcript of the testimony of defendant Joseph E. Torrence taken at the prior hearing, the following appears regarding his transfer of stock to his wife:

"Mrs. Torrence paid for that, had put in the money for that stock, and it was issued to her later. Her money was put in originally, and in forming this company with R. M. Connor, he said, 'You are going to be the president, you want most of the stock in your name, and Mrs. Torrence will have the balance in her name.' Then later we decided that the money having come from Mrs. Torrence, that she should have the stock in her name, so I asked him to transfer it."

Mr. Torrence testified he owned no property and had no bank account; that he owed some doctor bills

and a personal note for $2,700 and the judgment held by plaintiff; that he had not conveyed any property since this suit was started and that his financial condition today is practically the same as when the suit was started; that his wife had put up everything she had as security for loans to carry on the business of the Torrence Oil Company.

At the conclusion of the testimony of Mr. and Mrs. Torrence, defendants' counsel moved to dismiss the bill of complaint on the ground plaintiff had submitted no proofs to substantiate the allegations of fraud on the part of defendants. On June 14, 1940, the trial court rendered a well-prepared opinion dismissing the bill of complaint, and we quote pertinent parts of such opinion:

"The judgment creditor in this case has not sought the benefits accruing under 3 Comp. Laws 1929, § 14617 (Stat. Ann. § 27.1581), and has filed a bill based upon a fraudulent transfer to reach assets of a judgment debtor rather than a bill in aid of execution as was within his province under 3 Comp. Laws 1929, § 13400 (Stat. Ann. § 26.889); *Morse* v. *Roach,* 229 Mich. 538. The burden of proof, therefore, to establish this fraudulent transfer still remains with the plaintiff. *Jaffe* v. *Ackerman,* 279 Mich. 304. The court is of the opinion that the plaintiff has not sustained that burden.

"The alleged fraudulent transfer of stock is purported to be May 5, 1931. There was no evidence produced that Joseph E. Torrence was insolvent on this date or became insolvent because of this alleged transfer. It is also noted that payments were made upon the mortgage and note sued upon up to and including April 30, 1932. Assuming plaintiff's contention that the funds used for the accumulation of the stock were not those of Katherine Torrence, in order to hold the transaction of May 5, 1931, fraudulent, there would have to be a presumption that there was a premeditated fraudulent plan conceived by the

Torrences and astutely maneuvered with an attempt to cover it up by further payments on the note and mortgage for nearly a year thereafter and that this was in anticipation of defendants' judgment of January 30, 1938, or other liabilities. In opposition to such conjecture, there is the denial of the defendants and the further assertion that the asset represented by the stock in the original instance was an accumulation of Katherine Torrence and that when stock certificates were later procured in recognition of this circumstance they were so issued. The allegation of fraudulent transfer as set forth by the plaintiff is purely upon belief and is not supported by any testimony or any witnesses. The court cannot presume or conjecture fraud. The circumstance is similar to that set forth in the case of *Darling* v. *Hurst,* 39 Mich. 765. Fraud may not be sustained by assertion only of the party claiming it. Where it is in dispute the burden is upon he who alleges it by good and independent evidence to establish it.''

Plaintiff filed motion for rehearing, which was denied; and plaintiff appeals.

The question is: Was the assignment of the 449 shares of stock of the Torrence Oil Company by Joseph E. Torrence to his wife, Katherine Torrence, about May 5, 1931, fraudulent and void as to plaintiff, a judgment creditor of Joseph E. Torrence?

Counsel in their briefs raise certain questions regarding the necessity of plaintiff's making levy before beginning this suit and regarding the shifting of the burden of proof to defendants.

This proceeding is not a ''bill in aid of execution'' under 3 Comp. Laws 1929, § 14617 (Stat. Ann. § 27.1581), which provides in part as follows:

''All the real estate of any debtor   *   *   *   shall be subject to the payment of his debts   *   *   * and may be levied upon and sold on execution as hereinafter provided. In all suits begun or hereafter to

be begun by the filing of bills in aid of execution, the complainant shall make a *prima facie* case by introducing in evidence the judgment against the principal defendant, the execution with the levy or levies thereon indorsed and proof of the conveyance or conveyances complained of. The burden of proof shall then be upon the judgment debtor * * * to show that the transaction or transactions are in all respects *bona fide*."

Under the above statute, which relates only to real estate, the levy of execution is a prerequisite to the filing of bill in aid of execution. *Jaffe* v. *Ackerman, supra; Mason* v. *Mason,* 296 Mich. 622. In proceedings by bill in aid of execution, the burden of proof shifts to the defendant when plaintiff has made a *prima facie* case by putting in evidence the judgment with levy indorsed thereon and proof of the conveyance complained of.

The present suit is in the nature of a "judgment creditor's bill." It was not necessary for plaintiff to make a levy before instituting this suit. *Morse* v. *Roach, supra.*

The so-called uniform fraudulent conveyance act, 3 Comp. Laws 1929, § 13392 *et seq.* (Stat. Ann. § 26.881 *et seq.*), provides in part as follows:

"SEC. 2. (1) A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. * * * (3 Comp. Laws 1929, § 13393.)

"SEC. 3. Fair consideration is given for property, or obligation;

"(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained. (3 Comp. Laws 1929, § 13394.)

"SEC. 4. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration. (3 Comp. Laws 1929, § 13395.)

"SEC. 5. Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent. (3 Comp. Laws 1929, § 13396.)

"SEC. 7. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors. * * * (3 Comp. Laws 1929, § 13398.)

"SEC. 9. (1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser;

"(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

"(b) Disregard the conveyance and attach or levy execution upon the property conveyed.

"(2) A purchaser who without actual fraudulent intent has given less than a fair consideration for the

conveyance or obligation, may retain the property or obligation as security for repayment." (3 Comp. Laws 1929, § 13400.)

Plaintiff alleged fraud in the assignment of stock, about May 5, 1931, from Joseph E. Torrence to Katherine Torrence, and the burden was upon plaintiff to prove such fraud. *Darling* v. *Hurst, supra; Peaslee* v. *Collier,* 83 Mich. 549; *Jaffe* v. *Ackerman, supra; Kipp* v. *Lamoreaux,* 81 Mich. 299; *Whelpley* v. *Stoughton,* 119 Mich. 314; *Mason* v. *Mason, supra.*

Allegations and conjectures as to fraud are not sufficient; there must be competent proof of the charges made. *Darling* v. *Hurst, supra; Peaslee* v. *Collier, supra.* In *Jaffe* v. *Ackerman, supra,* p. 309, we said:

"Although transactions between husband and wife should be closely scrutinized when the rights of creditors are involved, *Magilavy* v. *Fekete,* 251 Mich. 518, the burden is upon him who seeks to set aside a transaction as fraudulent as to creditors, to adduce evidence in support of his claim, even though the transaction assailed is one between husband and wife. *Darling* v. *Hurst,* 39 Mich. 765; *Peaslee* v. *Collier,* 83 Mich. 549."

Under the fraudulent conveyance act above quoted, plaintiff must establish that the assignment of the 449 shares of stock to Katherine Torrence was made (1) with actual intent to defraud, or (2) that such assignment rendered defendant Joseph E. Torrence insolvent or left him with unreasonably small capital to carry on his business, and also that there was no fair consideration for the assignment. *Mason* v. *Mason, supra; Watzel* v. *Beardslee,* 289 Mich. 522, 526.

In the event plaintiff had established that the assignment of stock rendered Joseph E. Torrence insolvent, or left him with unreasonably small capital,

and also that there was no fair consideration for the assignment, then the order of proof would have shifted to defendant to go forward with the evidence that the consideration was in fact fair and adequate. There is no evidence that defendant Joseph E. Torrence became insolvent about May 5, 1931, because of the transfer of the 449 shares of stock to his wife, or that such transfer left him without a reasonable amount of capital to carry on his business. In fact, there is no testimony whatever regarding the financial condition of Joseph E. Torrence on about May 5, 1931. There is no proof that Joseph E. Torrence did not receive a fair consideration for the stock. The record shows that Katherine Torrence had invested at least $15,000 in the Torrence Oil Company directly or indirectly by way of loans or property.

Plaintiff has taken no steps to foreclose the mortgage securing the original loan to plaintiff's decedent. Payment on the note and mortgage to plaintiff's decedent for a year after the alleged fraudulent transfer of stock about May 5, 1931, to some extent negative the implication of bad faith on the part of Torrence and his wife.

Plaintiff's counsel cite and quote from the case of *Bentley* v. *Caille*, 289 Mich. 74. In that case the defendant conveyed all her property to her brother, reserving a life interest, and it was admitted that the conveyance left her insolvent. We said (p. 78):

"When insolvency is combined with a reservation in the grantor of the life use of the property conveyed, there is a most compelling indication of fraud."

Such decision does not sustain plaintiff's contention in the present case where there is no proof of insolvency and no reservation of interest.

We are inclined to look askance at the situation in the present case, where Joseph E. Torrence, in-

capacitated by illness for many years, transferred all of his stock holdings in the oil company to his wife and yet continued to draw his salary as president. However, this was a close corporation, a family affair. Joseph E. Torrence had been ill 10 years or more, and Mrs. Torrence had apparently been the moving factor in connection with both the financing and the management of the company. We cannot go beyond the record, which fails to show actual intent to defraud on the part of defendants, and also fails to show that the assignment of stock on about May 5, 1931, rendered Joseph E. Torrence insolvent, or left him with unreasonably small capital to carry on his business, and that the consideration for such assignment was inadequate.

From a careful examination of the entire record, we are of the opinion that the conclusion reached by the trial court was correct.

The decree dismissing the bill of complaint is affirmed, with costs to defendants.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.