256 F.2d 112
 William OTTE, Richard Green and Russell Knapp, as Trustees
of Paper Corporation of America, Bankrupt, Appellants,
v.
Murray LANDY, Individually and as Mortgage Trustee, and I.
Lawrence Lesavoy, Appellees.
 No. 13294.
 United States Court of Appeals Sixth Circuit.
 June 18, 1958.
 
 David Haar, New York City, James K. Brooker, of Smith & Brooker, Bay City, Mich., on brief, for appellants.
 E. Cyril Bevan, Detroit, Mich., Francis K. Young (of Bevan, Young & Walter), Detroit, Mich., Clendon H. Lee (of O'Connor & Farber), New York City, on brief, for appellees.
 Before SIMONS, Chief Judge, and MARTIN and STEWART, Circuit Judges.
 STEWART, Circuit Judge.
 
 
 1
 The appellants are the trustees in bankruptcy of Paper Corporation of America, a Delaware corporation which was adjudicated a bankrupt in February, 1955. The corporation's principal property was a paper mill in Cheboygan, Michigan. Proceeding under 70, sub. e of the Bankruptcy Act,[1] the trustees brought this action to set aside a mortgage on this property which had been executed by the corporation in 1947, on the ground that the mortgage was a fraudulent conveyance under Michigan law. The court found that the bankrupt had received fair consideration for the mortgage and held it valid as to that part of the mortgaged property which was realty. The court held the mortgage invalid insofar as it covered personalty, however, because of the mortgagee's failure to re-record as required by the Michigan law of chattel mortgages. The district court's findings of fact and conclusions of law are embodied in a memorandum reported at 143 F.Supp. 893. Several claims of error are made on this appeal, but the primary issue is whether the district court was correct in sustaining the validity of the mortgage on the bankrupt's realty.
 
 
 2
 The facts giving rise to this litigation are set out in some detail in the district court's memorandum and need only be summarized here. In 1944 the appellees, Landy and Lesavoy, organized a Pennsylvania corporation for the purpose of acquiring the paper mill in Cheboygan. Their initial investment was $150,000, represented by fifteen hundred shares of common stock. The operation of the mill was extraordinarily successful, the corporation realizing net profits after taxes of $321,923.60 in 1946 and $1,062,657.55 in 1947. No dividends were paid, and the corporation therefore had a very large earned surplus at the end of 1947.
 
 
 3
 Landy and Lesavoy were interested in working out an arrangement which would make it possible to cash in on their bonanza in the form of capital gains. To this end they negotiated a rather complicated plan with a New York charitable corporation, under which they were eventually to receive $3,350,000 for their stock in the Pennsylvania corporation. Pursuant to this plan several successive steps were taken.
 
 
 4
 The charitable corporation organized a wholly-owned Delaware corporation, to which Landy and Lesavoy's shares in the Pennsylvania corporation were transferred. The Delaware corporation then liquidated the Pennsylvania corporation and assumed its existing liabilities. The charitable corporation paid $200,000 directly to Landy and Lesavoy (which was later repaid by the Delaware corporation). The obligation to pay the balance of the purchase price was undertaken by the Delaware corporation, which issued its note for $3,150,000 and as security executed a mortgage on its fixed assets in Cheboygan. Landy as trustee was the payee of the note and the mortgagee.
 
 
 5
 The note provided for payment in periodic installments extending over a twelve-year period, with the first installment of $500,000 due immediately. The operation of the paper mill by the Delaware corporation was not successful, and, after the initial $500,000, only one other payment was made on the note, $100,000 in January, 1949. As time went on the operation of the paper mill became progressively unsuccessful, and the culmination, after a series of events not here relevant, was the Delaware corporation's bankruptcy in 1955.
 
 
 6
 The gist of the present action by the trustees in bankruptcy was their claim that the 1947 mortgage was a fraudulent conveyance which they were entitled to have set aside. The sections of the Michigan statute upon which the trustees specifically relied provide as follows:
 
 
 7
 'Conveyance by insolvent. Sec. 4. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.' Mich.Stat.Ann. 26.884, Comp.Laws 1948, 566.14.
 
 
 8
 'Conveyances by persons in business. Sec. 5. Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.' Mich.Stat.Ann. 26.885, Comp.Laws 1948, 566.15.
 
 
 9
 'Conveyances by a person about to incur debts. Sec. 6. Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he well incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.' Mich.Stat.Ann. 26.886, Comp.Laws 1948, 566.16.
 
 
 10
 The trustees had the burden of establishing that the mortgage was a fraudulent conveyance. Watzel v. Beardslee, 1939, 289 Mich. 522, 526, 286 N.W. 813. One of the essential facts it was incumbent upon them to prove was that the mortgage had not been given for a fair consideration. Dean v. Torrence, 1941, 299 Mich. 24, 35, 299 N.W. 793. The district court found that the trustees had failed to prove this necessary element of their case, and that the mortgage had in fact been given for a fair consideration within the meaning of the Michigan statute.[2] Because it is our conclusion that this dispositive finding was clearly correct it is unnecessary to consider many of the collateral questions which have been argued in the briefs and orally.
 
 
 11
 What did the Delaware corporation acquire when it received all of the Pennsylvania corporation's stock in return for executing the mortgage? An appraisal made by competent, disinterested appraisers less than nine months before the transfer showed that the Pennsylvania corporation's fixed assets had a 'sound value' of almost $2,000,000. The district court's finding that the fixed assets, including machinery purchased after the appraisal, had a value of $2,027,780.33 at the time of the transfer, and that the value of all the assets therefore amounted to almost $4,000,000 was supported by the documentary and testimonial evidence and clearly not erroneous. Against these assets the Delaware corporation assumed the Pennsylvania corporation's indebtedness of over $700,000, leaving net assets of more than $3,250,000. In addition to these tangible assets the Delaware corporation acquired a going business with a short but impressive history of extremely high earnings. This going business had experienced employees, established sources of raw materials, a substantial back-log of orders, and a list of established customers. Upon these facts was based the district court's ultimate finding that the Delaware corporation received fair consideration when it executed the mortgage to secure the $3,150,000 note, and upon these facts we hold that the district court's finding was correct.
 
 
 12
 The appellants' other contentions merit no extended discussion. Specifically, we hold that Landy as sole mortgagee was the proper defendant, and that it was not incumbent upon Lesavoy to make an independent defense to the action. We further hold that in imposing costs the district court did not exceed an allowable discretion. Cold Metal Process Co. v. Republic Steel Corporation, 6 Cir., 1956, 233 F.2d 828, 847; Cleveland v. Second National Bank & Trust co., 6 Cir., 1945, 149 F.2d 466. The only remaining issue relates to the value of the chattels, which the court correctly found were not subject to the mortgage lien. The court determined which of the fixed assets were chattels, and found that they had a value of $52,185.06 at the time of the appraisal in March, 1947. The appellants are correct in their assertion that the identity and value of the bankrupt's chattels subsequent to the appraisal date have not been determined.
 
 
 13
 The judgment of the district court is affirmed.
 
 
 
 [1]
 'A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.' 11 U.S.C.A. 110, sub. e(1)
 
 
 [2]
 'Fair consideration. Sec. 3. Fair consideration is given for property, or obligation; (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.' Mich.Stat.Ann. 26.883, Comp.Laws 1948, 566.13